UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GENE H. PROFITT,                              Case No. 1:09-cv-518

      Plaintiff,                              Beckwith, J.
                                              Wehrman, M.J.

vs.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g).  At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was not entitled to Supplemental Security Income ("SSI").  (*See* Administrative Transcript ("Tr.") (Tr. at 11-22) (ALJ's decision)).

**I.**

Plaintiff filed an application for SSI on December 6, 2005 alleging a disability onset date of January 1, 2001, due to back pain and knee problems.  (Tr. 49, 63).  His application was denied initially and on reconsideration.  Plaintiff then requested a hearing *de novo* before an ALJ.  An evidentiary hearing, at which Plaintiff was represented by counsel, was held on October 20, 2008.  (Tr. 246-76).

On December 15, 2008, the ALJ entered his decision denying Plaintiff's claim.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

That decision stands as Defendant's final determination consequent to denial of review by the Appeals Council on June 2, 2009. (Tr. 4).

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1.     The claimant has not engaged in substantial gainful activity since December 6, 2005, the application date (20 CFR 416.971 *et seq*.).

2.     The claimant has the following severe impairments: bilateral knee pain, low back pain, and a depressed-type bipolar disorder (20 CFR 416.921 *et seq*.).

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P Appendix 1 (20 CFR 416.925 and 416.926).

4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). However, the claimant must be permitted to alternate periods of sitting and standing at hourly intervals, and he is restricted to performing jobs in which he would be able to use a cane for assistance when ambulating. He is also precluded from working on uneven surfaces, repetitively operating foot controls, stooping, crouching, climbing ladders, ropes, or scaffolds or otherwise working around hazards. The claimant is also restricted to performing jobs which would not require concentration on a single task for more than 15 minutes at a time, more than limited contact with co-workers or supervisors, or any interpersonal contact with members of the general public.

5.     The claimant is unable to perform any past relevant work (20 CFR 416.965).

7.     The claimant was born on May 21, 1955, and was 50 years old, which is defined as an individual "closely approaching advanced age," on the date the application was filed (20 CFR 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as the framework supports a finding that the claimant is "not disabled" whether or not he has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

11.   The claimant has not been under a disability, as defined in the Social Security Act, since December 6, 2005, the date his application was filed (20 CFR 416.920(g)).

(Tr. 14-22).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI.

On appeal, Plaintiff maintains that: (1) the ALJ erred in evaluating Plaintiff's use of cane; (2) the ALJ erred in failing to give controlling weight to the opinions of Plaintiff's treating physicians; (3) the ALJ erred in evaluating Plaintiff's pain, credibility, and subjective complaints; (4) the ALJ erred in failing to pose a valid hypothetical question to the vocational expert.  Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  In performing this

3

review, the Court considers the record as a whole.  *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts.  If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows:  At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform his past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform his past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*).

4

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### A.

For his first assignment of error, Plaintiff asserts that the ALJ improperly evaluated Plaintiff's need to use a cane.  Here, the ALJ accommodated Plaintiff's physical impairments by restricting him to light work[2] that would allow alternate periods of sitting and standing at hourly intervals and the use of a cane for assistance when ambulating.  (Tr. 16).

Plaintiff, however, asserts that his use of cane precludes light work, as light work requires frequent lifting and/or carrying of objects up to 10 pounds.  Thus, Plaintiff maintains an individual would not be able to hold onto a cane while lifting and/or carrying objects.  *See Love v. Commissioner of Social Sec.*, 605 F.Supp.2d 893, 907 (W.D.Mich. 2009).  In *Love*, the Court noted that the ALJ correctly found that Plaintiff can lift 20 pounds, but failed to comprehend how Plaintiff can carry 20 pounds if he requires a "hand-held assistive device" to ambulate.  *Id*.  The Court further noted the ALJ

---

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§404.1567(b) (*re*:DIB), 416.967(b) (*re*: SSI).  Social Security Ruling (SSR) 83-10 defines the standing or walking requirements for light work to be approximately six hours for an eight-hour day. SSR 83-10.

did not addresses the illogic of this conclusion. *Id.* Thus, the Court found that the ALJ's

RFC determination is not supported by substantial evidence. *Id*.

Here, in response to hypothetical questions accurately describing Plaintiff's

limitations, the vocational expert ("VE") testified that there were approximately 15,000

unskilled light level jobs that Plaintiff could perform in the Dayton, Ohio region. (Tr.

272). Thereafter, when asked if the "limitation of the use of a cane to ambulate" would

further erode the remaining light jobs, the VE responded "no." (Tr. 273). Thus, the ALJ

clearly addressed this alleged discrepancy. *See Grillot v. Astrue* , Case No. 3:08-cv-111,

WL 87577, 7 -8 (S.D.Ohio 2009) (Plaintiff's argument that his need to use a cane is

inconsistent with the ability to perform a limited range of light work is not persuasive.

Even assuming that Plaintiff requires the use of a cane, the VE testified at the first

administrative hearing that the use of an ambulatory aid would not have an affect on the

number of jobs available to individual with Plaintiff's limitations); *See also McKinney v.

Commissioner of Social Security*, WL 877668, 9 -10 (E.D.Mich. 2009) (The final

hypothetical questions the ALJ asked the VE which included a sit-stand option and use of

a cane (R. 224), and the corresponding answers the ALJ relied on, were adequate and

proper because the hypothetical relied on included all of Plaintiff's substantiated

impairments and resultant limitations).

Thus, the VE's testimony in response - setting forth the many number of jobs that

plaintiff can still perform - constitutes substantial evidence that plaintiff is not disabled.

*See Hammond v. Apfel,* No. 99-1451, 2000 WL 420680, at *8 (6th Cir. Apr. 12, 2000); *See Hall v. Bowen*, 837 F.2d 272, 273, 275–76 (6th Cir. 1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy).  Accordingly,  Plaintiff's assignment of error lacks merit.

**B.**

For his next assignment of error, Plaintiff maintains that the ALJ erred in failing to give deference to the opinion of Plaintiff's treating physicians, Dr. Kaiser and Dr. Onady. Plaintiff's assertions are unavailing.

An ALJ must give the opinion of a treating source controlling weight if he or she finds that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).  Deference is due, however, only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion. *Giddings v. Richardson,* 480 F.2d 652, 656 (6th Cir. 1976).  Mere diagnosis of a condition is not indicative of a disabling functional debilitation.  *See Varley v. Secretary of Health & Human Servs.,* 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Wilson,* 378 F.3d at

7

544 (citing Soc. Sec. Rul. 96-2p). Nonetheless, the ultimate determination of whether a claimant is "disabled" rests with the Commissioner, and not with the treating physician. *See* Soc. Sec. Ruling 96-5p; *see also Varley,* 820 F.2d at 780.

 A. *Dr. Kaiser*

 In July 2008, Dr. Kaiser, Plaintiff's family physician, found that Plaintiff had low back and right knee pain making it difficult to walk, and he noted that Plaintiff used a cane. (Tr. 207). Dr. Kaiser opined that Plaintiff could walk for one block without rest or pain, could sit up to one hour at a time and stand for up to ten minutes at a time for a total of about four hours of sitting and less than two hours of standing in a day. (Tr. 208-09). He opined that Plaintiff could rarely lift and carry less than ten pounds or twist, and could never stoop, crouch, squat, or climb ladders or stairs. (Tr. 209-10). Dr. Kaiser estimated that Plaintiff would be absent from work more than four days per month as a result of his impairments or treatment. (Tr. 210). He supported his opinion by noting that Plaintiff had decreased range of motion in his low back, was slow to move, and had increased tightness, tenderness, and spasm in his low back (Tr. 207). Thus, Dr. Kaiser's lifting restrictions are consistent with sedentary work,[3] however, his standing/sitting limitations would preclude work activity.

---

 [3] Sedentary work, involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§404.1567(a) (*re*: DIB), 416.967(a) (*re*: SSI) "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

The ALJ rejected Dr. Kaiser's limitations and found Plaintiff capable of performing light work.  The ALJ found an "insufficient objective evidentiary basis" for Dr. Kaiser's more restrictive limitations.  (Tr. 18, 210-16).  The ALJ noted that the degree of degenerative changes in Plaintiff's back and knees are not so debilitating that he would be unable to lift up to 20 pounds.  (Tr. 18).  The ALJ further noted that there is no basis in the record to establish that Plaintiff could not stand/walk for sufficient periods on a regular basis.

Plaintiff, however, maintains that Dr. Kaiser's findings are supported by his knee surgery in August 2006 (Tr. 143-44); later knee injury in 2006 (Tr. 184-85); evidence of knee popping and antalgic gait on exam in March 2008 (Tr. 176-77); and an MRI from April 2008 showing problems with the right knee.  (Tr. 199).  Contrary to Plaintiff's assertions, such evidence does not support Dr. Kaiser's restrictive findings.  As noted by the Commissioner, the only objective evidence of Plaintiff's low back impairment was a September 2006 CT scan showing some degenerative changes, particularly at L4-5, which caused only mild to moderate narrowing of nerve canals.  (Tr. 168).  Plaintiff presented no evidence of any nerve root compression or neurological involvement.  (Tr. 16).  Additionally, Dr. Kaiser's finding that Plaintiff could rarely lift or carry ten pounds, is contradicted by Plaintiff's own testimony that he could life fifty pounds.  (Tr. 18).

With respect to Plaintiff's knee impairments, a July 2006 MRI showed meniscal tearing in his right knee, which was surgically repaired in August 2006.  (Tr. 143-44, 173-

9

74, 193-94). Three months later, Dr. Welker, Plaintiff's knee surgeon, noted that Plaintiff had full range of motion in his hip, knee, and ankle, little to no pain, no effusion, and no instability. (Tr. 184). In January 2007, Dr. Welker again found good range of motion in Plaintiff's knee. (Tr. 182-83). In March 2008, Plaintiff complained of right-knee pain and popping. (Tr. 176). However, x-rays done in early March 2008 were negative for any significant degenerative changes in either of Plaintiff's knees. (Tr. 175). Furthermore, a April 2008 MRI showed a progression of degenerative changes in his right knee (Tr. 199-200).

Thus, in light of this evidence, the ALJ properly limited Plaintiff to light exertion jobs with a sit/stand option and the option to use a cane for ambulation. (Tr. 16-17). Furthermore, the ALJ "fully considered" Dr. Kaiser's findings and incorporated those findings consistent with the objective medical evidence in Plaintiff's RFC. (Tr. 18).

Accordingly, the ALJ reasonably declined to grant controlling weight or even substantial deference to the opinion of Dr. Kaiser. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence.").

B.    *Dr. Onady*

Plaintiff further asserts that the ALJ erred in the weight afforded to the assessments provided by Dr Onady, Plaintiff's treating psychiatrist.

In January 2007, Plaintiff began seeing Dr. Onady who noted that Plaintiff had constant worry, some paranoia, and infrequent panic; was fully oriented with neat and clean appearance and behavior; had fair memory and cognition; and had poor judgment

10

and insight. (Tr. 239). She assigned Plaintiff with a global assessment of functioning (GAF) score of 55, which indicated "moderate symptoms"[4] (Tr. 239).

In August 2008, Dr. Onady completed a questionnaire in which she opined that Plaintiff was moderately restricted in his activities of daily living, and markedly limited in maintaining social functioning and maintaining concentration, persistence, or pace, with no episodes of decompensation. (Tr. 214). She checked boxes indicating that Plaintiff had a "residual disease process that . . . even a minimal increase in mental demands . . . would be predicted to cause the individual to decompensate," and that Plaintiff had a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement" (Tr. 215). Dr. Onady assigned Plaintiff a GAF score of 65, which indicated "some mild symptoms." DSM-IV-TR at 34.

The ALJ, however, failed to credit Dr. Onady's opinion, finding that her limitations were not well-supported and inconsistent with her own treatment notes. (Tr. 23). Specifically, the ALJ noted that the psychological restrictions in Dr. Onady's August 2008 assessment are "wholly inconsistent with the GAF score of 55 and 65, which she reported for the claimant" (Tr. 19). The ALJ further noted the restricts in the August

---

[4] The GAF scale reflects a "clinician's judgment" of the individual's symptom severity or level of functioning. American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, 32-33 (4th ed., Text Rev. 2000) (DSM-IV-TR). The higher the number, the higher the level of functioning. *Id*. A GAF score of 61-70 reflects "some mild symptoms" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." *Id*. at 34. A GAF score of 51-60 reflects "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." *Id*. A GAF score of 41-50 reflects "serious symptoms" or "any serious impairment in social, occupational, or school functioning." *Id*. A GAF score of 31-40 reflects a "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood" *Id*.

2008 assessment were contradicted by Plaintiff's description of his daily activities, and is not well-supported by her own treatment notes.

As noted by the Commissioner, Dr. Onady initially noted Plaintiff's constant worry and poor judgment and insight, yet also found that he had only some paranoia, infrequent panic, was fully oriented with neat and clean appearance and behavior, and had fair memory and cognition.  (Tr. 239).  In subsequent treatment notes, she regularly indicated that Plaintiff was stable with normal or mildly dysphoric mood and appropriate affect. (Tr. 15, 225-27, 231, 234-35).

Moreover, the treatment notes from Plaintiff's monthly therapy sessions offered little to support her opinion, as they usually consisted of reflective listing by the therapist that consistently benefitted Plaintiff.  (Tr. 224, 228, 230, 232-33).  Furthermore, Dr. Onady only saw Plaintiff four times a year, which was a frequency of treatment that, as noted by the ALJ, was "decidedly inconsistent with debilitating psychological problems" (Tr. 19).  20 C.F.R. § 416.927(d)(2)(i) ("[T]he more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

Thus, the ALJ considered the medical evidence and treatment history and properly found that they did not support a finding of disability.  Furthermore, the ALJ clearly articulated his reasoning for the weight assigned to the opinions of Drs. Kaiser and Onady and the undersigned finds that the ALJ's decision to give little weight to their findings is supported by substantial evidence.

12

**C**.

Plaintiff argues next that the ALJ erred in evaluating his pain, credibility, and subjective complaints.  Plaintiff asserts, *inter alia*, that the ALJ erred in failing to find his testimony fully credible and improperly cited Plaintiffs's alcohol and marijuana use. Plaintiff's assertions are unavailing.

When considering a claim for disability based on pain, the Court is guided by the Sixth Circuit's instruction that, initially, there must be objective evidence of an underlying medical condition.  *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).  If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain.  *Id.*; *see also Felisky,* 35 F.3d at 1038-39.

Moreover, it is within the discretion of the ALJ - who actually meets with and takes testimony from an individual plaintiff -  to evaluate that plaintiff's credibility.  As the Sixth Circuit has found: "[i]t is for the [Commissioner], not a reviewing court, to make credibility findings."  *Felisky v. Bowen,* 35 F.3d 1027,1036 (6th Cir. 1994); *see also McGuire v. Commissioner of Soc. Sec.,* No. 98-1502, 1999 WL 196508, at *6 (6th Cir. Mar. 25, 1999) (*per curiam*) ("An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with

13

the duty of observing a witness's demeanor and credibility").

Here, as discussed above, the objective medical evidence was inconsistent with Plaintiff's alleged degree of limitation.  Furthermore, the ALJ found that Plaintiff's daily activities and level of functioning were also inconsistent with his allegations of disability (Tr. 19-20).  As detailed by the Commissioner, Plaintiff testified that he could walk twenty-five yards, could stand for one-half hour, could sit for one hour, and could probably lift fifty pounds.  (Tr. 260-61).  He could climb stairs with a cane and a handrail (Tr. 261).  He was able to wash dishes, sweep, mop, and vacuum, but chose not to do those activities.  (Tr. 262).  He shopped at the grocery store, drove around in his car, visited friends and family, and went bow-hunting and fishing with his nephew.  (Tr. 263, 265-66).  He went to the Eagle's Lodge to have a couple of drinks once a month (Tr. 264).

Contrary to Plaintiff's assertion, the ALJ properly considered that Plaintiff engaged in a variety of daily activities, and it was appropriate for him to consider this factor in making his credibility finding. *See Warner*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").  Furthermore, the ALJ noted that Plaintiff's treatment only involved "periodic, conservative measures that are clearly not indicative of total disability."  (Tr. 20).

The ALJ also properly found that Plaintiff's continued use of alcohol, marijuana, and cigarettes showed an apparent disregard for his health and physical well-being.  (Tr.

14

20). Plaintiff argues that his continued use of alcohol and marijuana should not have hurt his credibility. However, Plaintiff's allegation that he did not have a drinking problem was questionable considering his history of two driving under the influence convictions and at least two other alcohol related convictions, such as public intoxication and assault (Tr. 264-65). Moreover, Plaintiff's continued marijuana use limited his treatment options, as testing positive for marijuana prohibited any possible treatment at a pain clinic (Tr. 184-85, 187). *See Russell v. Secretary of Health & Human Servs.,* No. 90-1395, 1990 WL 209576, at *3 (6th Cir. Dec. 19, 1990) ("This court has held that when a claimant's lifestyle contributes to his symptoms ... he is not entitled to disability benefits .... Plaintiff's unwillingness to [stop smoking and thus] relieve his symptoms undermines the credibility of his claims ....").

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

## D.

For his final assignment of error, Plaintiff argues that the ALJ's hypothetical

question was improper because it "left out the use of the cane while standing to perform light work," "left out how [Plaintiff] could carry 10-20 pounds while holding onto the cane to perform light work," and "left out supported limitations from the nervous impairments set out by Dr. Onady."

The Sixth Circuit has repeatedly made clear that a hypothetical question need only reference a plaintiff's *credible* limitations; unsubstantiated complaints are not to be included in the question. *See McKenzie v. Commissioner of Soc. Sec.*, No. 99-3400, 2000 WL 687680, at * 4 (6th Cir. May 19, 2000). Here, as noted above the ALJ questioned the vocational expert regarding Plaintiff's use of a cane and incorporated the use of a cane in Plaintiff's RFC determination. Furthermore, the ALJ found that Dr. Onady's findings were not supported by the record and therefore not entitled to deference.

The ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of his ability to perform work. As discussed above, the ALJ's residual functional capacity finding was supported by substantial evidence. The VE's testimony in response - setting forth the many numbers of jobs that plaintiff can still perform - thus constitutes substantial evidence that Plaintiff is not disabled. *See Hammond v. Apfel*, No. 99-1451, 2000 WL 420680, at *8 (6th Cir. Apr. 12, 2000).

Plaintiff also asserts that the ALJ erred in step five of his sequential analysis because he did not further clarify the 15,000 light jobs he found Plaintiff could perform into specific jobs types and numbers. Here, in response to a series of hypothetical

16

questions outlining Plaintiff's limitations, the VE listed 35,000 jobs Plaintiff could perform, which included electronics workers, mail clerks, rental clerks, and machine tenders.  The ALJ then added a sit/stand option and the use of the cane into the hypothetical question.  Given those limitations, the VE testified that Plaintiff could perform 15,000 of the original 35,000 jobs identified.  However, the VE did not identify which specific jobs remained.

In his decision, the ALJ noted that the VE testified that Plaintiff "could perform 15,000 unskilled jobs at the light level exertion, in the Dayton, Ohio region, including specific jobs as an electronics worker, mail clerk, rental clerk, and machine tender."  (Tr. 21-22).  Thus, based on the testimony of the VE, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

As outlined by the Commissioner, a claimant is not disabled if the claimant can make an adjustment to "other work" that exists in "significant numbers in the national economy (either in the region where [claimant] live[s] or in several regions in the country)." 20 C.F.R. §§ 416.920(a)(4)(v), (g), 416.960(c). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations)" that meet a claimants's physical or mental abilities and vocational qualifications. 20 C.F.R. § 416.966(b).  Thus, the ALJ met his step five burden by finding that Plaintiff could perform a significant number of jobs in the national economy. *Hardway v. Secretary of*

17

*Human Servs.*, 823 F.2d 922, 928 (6th Cir.1987) (finding that the Commissioner's burden was met when the vocational expert testified that there were jobs in the area that the claimant could perform).

For the foregoing reasons, Plaintiff's assignments of error are without merit.  The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1.     The decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED.**

2.     As no further matters remain pending for the Court's review, this case should be **CLOSED.**

Date:  8/23/10

/s J. Gregory Wehrman
J. Gregory Wehrman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GENE H. PROFITT,                                    Case No. 1:09-cv-518

     Plaintiff,                                    Beckwith, J.
                                                    Wehrman, M.J.

vs.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.
.

**NOTICE**

     Attached hereto is the Report and Recommended Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).