UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


Gene H. Profitt,               :  Case No. 1:09-cv-518
                               :
     Plaintiff,                :
                               :
vs.                            :
                               :
Commissioner of Social Security, :
                               :
     Defendant.                :


**ORDER**

Before the Court is the Magistrate Judge's Report and
Recommendation (Doc. 13), and Plaintiff's Objections to the
Report (Doc. 14).  The Magistrate Judge recommends that this
Court affirm the decision of the Administrative Law Judge denying
Plaintiff's application for Social Security disability benefits.
For the following reasons, Plaintiff's objections are overruled.

**FACTUAL BACKGROUND**

Plaintiff Gene Profitt was born in 1955.  He is a high
school graduate, and he worked in the past as a cabinetmaker,
roofer, painter and installer.  He filed an application for
benefits on December 6, 2005, claiming that he became disabled on
January 1, 2001 when he was last able to regularly work.  His
application listed bad knees and a bad back, which prevent him
from standing for any meaningful period of time.  His self-

-1-

reported symptoms in January 2006 included extreme pain and
fatigue.  He said that standing, climbing stairs, and bending
over made his symptoms worse.  (TR 74-77)  He used a cane to help
him get up and down, and his knees would occasionally swell.  (TR
78)  Profitt was diagnosed with diabetes in the Spring of 2006
(TR 92), and he had surgery on his right knee in August 2006.  He
states that he has no cartilage in his right knee.  (TR 92)  The
operative note for his 2006 knee surgery states that Profitt had
a medial meniscus tear repaired.  The report also notes grade 2
chondromalacia, and a chondral defect on his medial condyle.  The
operation went smoothly with no complications.  (TR 143-144)
However, Profit complained of swelling in the knee and went to
the emergency room three days later; fluid was drained from his
knee and he was discharged.  (TR 148-166)

A CT scan of his lumbar spine conducted on September 30,
2006 documented suspected hypertrophy at L1-2, with relatively
little stenosis.  There was at most some minimal bulge at L2-3,
and at least mild or mild to moderate central stenosis, but with
little foraminal compromise.  A diffuse bulge and a spur was
noted likely at L3-4, with some hypertrophy and mild, or mild to
moderate, stenosis.  Some diffuse bulge was seen at L4-5 and some
hypertrophy that moderately narrows the central canal, in
particular the left neural foramen.  No disk protrusion was
evident at L5-S1.  The overall impression was spondylitic and

disc alterations, particularly at L4-5. (TR 167-168)

The March 14, 2008 x-rays of both of Profitt's knees revealed "very minimal degenerative disease." (TR 175) The April 1, 2008 MRI on his right knee showed some cartilage degeneration, and some thickening, irregularity and edema around his ACL. Additional chondromalacia changes to the patella were also noted. (TR 200)

Profitt began seeing a psychologist, Dr. Onady, in January 2007, complaining of depression. Dr. Onady reported that Profitt stated he was constantly worried, with some paranoia and infrequent panic. She initially assigned him a Global Assessment of Functioning (GAF) score of 55, reflecting "moderate" symptoms of mental disease. (TR 239) Profitt testified that he attended counseling sessions approximately once a month, and saw Dr. Onady about four times a year for medication management. Dr. Onady completed an RFC assessment for Profitt's SSI application in August 2008, in which she noted major depression with some bipolar aspects, as well as polysubstance abuse in remission. Dr. Onady's functional assessment would indicate that Profitt is disabled under Listing 12.04, affective disorders, because Onady found that Profitt had marked impairments in concentration; persistence in tasks and in completing tasks in a timely manner; meeting demands of competitive work; and sustaining tasks without undue interruptions or distractions. However, Dr. Onady's GAF

rating for Profitt at that time was 65, indicating mild symptomatology and an improvement over the year of treatment. (TR 211-223)

Dr. George Kaiser, a physician with Profitt's primary care group, also completed an RFC assessment in July 2008. (TR 207-210) Dr. Kaiser stated that Profitt visited monthly for low back and right knee pain. He believed that Profitt could tolerate low stress jobs, but would frequently have impaired attention and concentration needed to perform even simple tasks. He stated that Profitt could walk one block without rest or pain; that he could sit for only one hour before needing to get up; that he could stand for ten minutes without sitting or moving; that he could stand and walk for a total of less than 2 hours in an 8-hour day, and sit for about four hours a day. He would need hourly breaks to walk around, and would have to be able to alternate positions frequently. He would need daily, unscheduled breaks during an eight hour day, and would need to use a cane while engaging in occasional standing or walking. He could rarely lift less than 10 pounds and never more than that. Dr. Kaiser estimated Profitt would be absent from work at least four days per month. These restrictions would effectively preclude Profitt from working.

The ALJ held a hearing on October 20, 2008. (TR 246-276) Profitt testified, describing his physical limitations and his

-4-

depression. The ALJ then posed a hypothetical question to the vocational expert, who opined that there were approximately 15,000 light duty, and 9,000 sedentary jobs available within the ALJ's articulated functional limitations. (TR 272-273)

The ALJ's decision found that Profitt has severe impairments of bilateral knee pain, low back pain, and a depressed-type bipolar disorder. He concluded that none of his impairments meets or equals one of the Listings. The ALJ rejected Dr. Onady's opinion that Profitt met Listing 12.04, noting the discrepancies between her RFC and her actual treatment notes. For instance, the notes from a July 14, 2008 visit state that Profitt was looking well, his mood was euthymic (normal, or non-depressed), and his affect was appropriate. Profitt had been prescribed only mild psychotropic medication, and he saw Dr. Onady only four times a year. Even with this rather minimal intervention plus his attendance at several counseling sessions, Onady's opinion of his GAF score increased from 55 at intake to 65 at the time she completed her RFC. (TR 211) A score of 65 indicates only "mild" symptoms, and conflicted with Onady's assessment of Profitt's multiple marked or extreme limitations. The ALJ also cited Profitt's own testimony that he can drive when he wants to, goes fishing and hunting, is able to perform household chores, go shopping, and to socialize with friends and relatives at will. He has never had an episode of

-5-

decompensation, and there was simply no evidence that Profitt is unable to function outside of a highly supportive living arrangement, as Dr. Onady stated.

Regarding Profitt's physical restrictions, the ALJ concluded that he would be capable of light work with the following significant modifications.  He must be permitted to alternate standing and sitting at hourly intervals; he is limited to jobs in which he could use a cane for assistance when ambulating.  He cannot work on uneven surfaces, repetitively operate foot controls; he cannot stoop, crouch, climb ladders, ropes or scaffolds, or work around other hazards.  He is restricted to jobs that require no more than 15 minutes concentration on a single task.  He cannot have more than limited contact with co-workers or supervisors, and cannot have any interpersonal contact with the general public.  (TR 16)

The ALJ noted that a state DDS physician's assessment from February 2006 found that Profitt was capable of medium work. Since that time, however, the ALJ noted that there had been documented progression in degenerative changes in his back and his knees.  Recognizing that fact, the ALJ added the limitation of use of a cane, citing Dr. Welker's belief that his right knee was worse by the Spring of 2008, and that eventually Profitt might need a knee replacement.  The ALJ described the hourly alternate sit/stand limitation as a reasonable compromise between

-6-

Profitt's testimony that he could not stand more than 30 minutes, and the objective medical evidence documenting post-operative degenerative changes but no significant trauma.

The ALJ also noted but discounted an evaluation in the record from a physician at Middletown Regional Hospital, whose signature is not legible. (TR 107-108)  This evaluation was done for Profitt's application; it would have limited Profitt to sedentary work, but it also found that Profitt was "employable." Profitt testified that he could lift 50 pounds, which the ALJ found to be an exaggeration.  But the severe restrictions contained in this RFC were not supported by the clinical evidence of record concerning Profitt's impairments.

The ALJ concluded that Profitt had established medical impairments, but had not demonstrated that the intensity, persistence, and negative effects of his reported symptoms limits his ability to perform basic work activities.  He found that Profitt's descriptions of his symptoms were not credible, and were not supported by the objective medical evidence in the record.  Based upon the testimony of the vocational expert that there were sufficient jobs in the economy that met the ALJ's functional capacity limitations, the ALJ ultimately concluded that Profitt is not disabled.

The Appeals Council denied review of the ALJ's decision, and Profitt timely filed this action.

## DISCUSSION

Standard of Review

Under 42 U.S.C. §405(g), this Court reviews the
Commissioner's decision by determining whether the record as a
whole contains substantial evidence to support that decision.
"Substantial evidence means more than a mere scintilla of
evidence, such as evidence a reasonable mind might accept as
adequate to support a conclusion." LeMaster v. Secretary of
Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986)
(internal citation omitted).  The evidence must do more than
create a suspicion of the existence of the fact to be
established.  The evidence must be enough to withstand a motion
for a directed verdict when the conclusion sought to be drawn
from that evidence is one of fact for the jury.  Id.

If the ALJ's decision is supported by substantial evidence,
the Court must affirm that decision even if it would have arrived
at a different conclusion based on the same evidence.  Elkins v.
Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir.
1981).  The substantial evidence standard "... presupposes that
there is a zone of choice within which the decisionmakers can go
either way, without interference by the courts.  An
administrative decision is not subject to reversal merely because
substantial evidence would have supported an opposite decision."
Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker

-8-

v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The district court reviews de novo the Magistrate Judge's recommendations regarding Social Security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

Profitt's Objections

Profitt's objections to the Report and Recommendation are each addressed below.

1. The ALJ Failed to Properly Consider Profitt's Use of a Cane to Stand, Not Solely to Walk.

Profitt contends that the ALJ erred in concluding that he needed a cane only to ambulate, instead of using it while standing as well as ambulating. Profitt testified that he used the cane to help him sit down, to get up and stand, and to stay more stable while he walks. (TR 254) He cites Dr. Kaiser's RFC which opines that he needs a cane "while engaging in occasional standing/walking." (TR 209) The ALJ's hypothetical to the vocational expert included a limitation of using a cane to ambulate. As noted above, the vocational expert testified that the limitation would not disqualify Profitt from performing approximately 15,000 light duty jobs, and approximately 9,000 sedentary jobs. (TR 272-273)

After reviewing Profitt's hearing testimony, the ALJ concluded that Profitt "appeared to greatly exaggerate the severity of his symptoms when he testified at the hearing. He

-9-

used a cane in his left hand but had no difficulty sitting or
rising.  He sat the entire hearing.  He did not exhibit any signs
of pain or emotional distress." (TR 14)  In explaining his
conclusions concerning Profitt's physical limitations, the ALJ
noted that the objective evidence documented some deterioration
in Profitt's knee between February 2006 (the date of the initial
state reviewer's RFC) and April 2008, the date of the MRI scan on
his right knee.  The ALJ found that the restrictions he
articulated - including using cane to walk - represented a
reasonable, fully supported compromise between the medium duty
limits suggested by the state reviewer, and Profitt's subsequent
treatment history.  The ALJ also concluded that the use of a cane
restriction was reasonable even though the medical need for the
cane "remains somewhat questionable." (TR 17)  The ALJ rejected
Profitt's testimony that he could not stand more than 30 minutes
at a time, finding this testimony to be clearly disproportionate
to the documented medical evidence.

    The Court finds that the ALJ's restriction, permitting
Profitt to use a cane while walking, is well supported by the
substantial medical evidence in the record.  Profitt recovered
from his 2006 knee surgery, and his treatment since then has been
conservative.  He failed to complete his post-surgical physical
therapy, and he could not explain the records documenting that
fact during his hearing testimony.  (TR 201-203, 258)  His

surgeon noted that Profitt may be a candidate for a knee replacement at some future, undefined point, but that notation is insufficient to support Profitt's subjective complaints that he argues currently require his constant use of a cane.

Profitt also contends that the ALJ's question to the vocational expert was erroneous for the same reasons discussed above.  As the Court concludes that the ALJ's opinion is supported by the record, his question to the vocational expert was not erroneous.  Profitt's first objection is therefore overruled.

2.  <u>The ALJ and the Magistrate Judge Failed to Properly Consider Dr. Kaiser's Opinion as to Profitt's Functional Limitations</u>.

Profitt argues that the ALJ improperly rejected Dr. Kaiser's July 2008 RFC assessment.  He argues that the ALJ and the Magistrate Judge found that Dr. Kaiser's opinion was not entitled to "controlling weight" but that they failed to properly consider whether his opinion, as Profitt's treating physician, was entitled to the "most weight" in the record.

The Social Security regulations provide that a treating physician's opinion is entitled to controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record."  20 C.F.R. §404.1527(d)(2).  That regulation also prescribes a number of factors to consider in this regard, including length and

-11-

frequency of visits during the treatment relationship, specialization, and consistency with the entire record. An applicable regulation, 20 C.F.R. §416.927(d)(4), instructs that "Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." The ALJ may therefore reject a treating physician's opinion, in whole or in part, if it lacks support or is inconsistent with the evidence of record. Moreover, the ALJ need not accept a medical opinion that a claimant is "disabled," as that determination is for the Commissioner to make, pursuant to 20 C.F.R. §404.1527(e)(1).

The ALJ discussed Dr. Kaiser's RFC assessment at some length, concluding that his opinions concerning Profitt's limitations were less than credible. The ALJ found that Dr. Kaiser's limitations on standing, walking, sitting, and weight lifting "essentially portray the claimant as partially bedfast and, as such, are wholly unsupported by the medical record." (TR 18) The Court sees no error in the ALJ's consideration of Dr. Kaiser's opinion. The ALJ properly recited the objective evidence (x-rays, MRIs and surgical results) concerning Profitt's knee and back pain, which document degenerative changes but not the type of disabling pain and severe restrictions contained in Dr. Kaiser's RFC. In addition, the Court notes that Dr. Kaiser states that Profitt was seen monthly, but there is no indication

-12-

of when this relationship began, and no documentation of actual clinical observations recorded by Dr. Kaiser or any other physician during any such visits.  The RFC assessment form is actually addressed to Dr. Paul Kirila but is signed by Dr. Kaiser.  Dr. Kaiser is a family practice physician, and the notes and records from Profitt's treating orthopedists do not contain the same extreme limitations noted by Dr. Kaiser.  Profitt's second objection is therefore overruled.

3.    The ALJ Improperly Evaluated Profitt's Subjective Complaints and His Credibility.

Profitt contends that the ALJ erred in discounting his subjective descriptions of his pain and his lack of mobility, and improperly questioned his credibility.

It is proper for the ALJ to consider a claimant's credibility, and to evaluate his subjective complaints against the objective medical data.  20 C.F.R. §416.929(a) provides that, once the claimant establishes a medical condition, the ALJ must consider (1) whether objective medical evidence confirms the severity of the reported symptoms, or (2) whether the condition can reasonably be expected to produce the alleged disabling symptoms.  "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).  The ALJ's assessment, if properly explained and supported

-13-

by substantial evidence, is entitled to deference from this
Court.

As noted above, the ALJ initially observed that Profitt
appeared to greatly exaggerate his symptoms during his hearing
testimony. After finding that Profitt had medically-determinable
impairments, the ALJ concluded that his descriptions of the
intensity, persistence and limiting effects of his reported
symptoms were not credible, insofar as they were incompatible
with the ALJ's articulated RFC limitations. He cited Profitt's
testimony that he can drive (and drives every day); that he is
able to perform normal household chores, but simply does not do
them; he has friends and relatives with whom he socializes, and
he hunts and fishes; he visits the "Eagles" lodge regularly, and
drinks alcohol despite his diabetes and his prior DUI and public
intoxication convictions. He also admitted to regular use of
marijuana, which disqualified him from participating in at least
one pain clinic to which he had been referred. The record
reflects that his orthopedic surgeon, Dr. Welker, specifically
instructed Profitt to refrain from any illegal drug use because
it would automatically disqualify him from any further treatment
of that sort. (TR 184-185)

The ALJ's assessment of Profitt's subjective reports of his
limitations is fully consistent with the analysis set forth in
Walters, and the Court therefore rejects Profitt's objections.

-14-

**CONCLUSION**

For all of the foregoing reasons, the Court overrules Plaintiff's Objections to the Magistrate Judge's Report and Recommendation.  The Court has reviewed the record de novo, and hereby adopts the Magistrate Judge's Report and Recommendation in full.

The Court affirms the decision of the Commissioner that Plaintiff is not entitled to an award of disability benefits.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: September 16, 2010       <u>s/Sandra S. Beckwith</u>
                                Sandra S. Beckwith
                                Senior United States District Judge